Filed 6/23/26  Martin v. Newrez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| GWENDOLYN MARTIN,<br>        Plaintiff and Respondent,<br><br>v.<br><br>NEWREZ LLC,<br>        Defendant and Appellant. | C104192<br><br>(Super. Ct. No. 24CV020925) |

Defendant Newrez, LLC, doing business as Shellpoint Mortgage Servicing, (Shellpoint) appeals from an order denying its motion for relief under Code of Civil Procedure section 473, subdivision (b) (section 473(b)).[1]

Plaintiff Gwendolyn Martin filed a petition for relief from financial obligations during active military service pursuant to Military and Veterans Code section 409.3. After the hearing on the original petition was taken off calendar due to defective service, Martin filed and served an amended petition on Shellpoint's agent for service of process. When Shellpoint failed to oppose the amended petition or appear for the hearing on it, the trial court granted the petition.  Approximately three months later, Shellpoint moved for relief from the order granting the uncontested petition.  Shellpoint contends that the trial court's refusal to set aside the order was an error under the mandatory and discretionary relief provisions of section 473(b).  Finding no error, we will affirm the judgment.

---

[1]      Undesignated section references are to the Code of Civil Procedure.

1

BACKGROUND FACTS AND PROCEDURE

Martin is a full-time active-duty member in the Air National Guard. She was called to active-duty service from June 2022 through September 2024, and subsequently from October 2024 through July 2025.

Shellpoint is a mortgage servicing company. Before Martin was called to active service, Martin entered into a mortgage loan agreement that required her to make monthly payments to Shellpoint.

In May 2023, Martin filed a civil complaint against Shellpoint arising from the loan agreement. The complaint alleged violations of the California Military Families Financial Relief Act of 2005 (Mil. & Vet. Code, § 800 et seq.), Rosenthal Fair Debt Collection Practices Act of 1977 (Civ. Code, § 1788 et seq.), and Consumer Credit Reporting Agencies Act of 1975 (Civ. Code, § 1785.1 et seq.), as well as causes of action for negligent misrepresentation and intentional/reckless misrepresentation. In or about February 2024, the parties settled that litigation, and Martin's complaint was dismissed with prejudice. Shellpoint contends that, as part of that settlement, certain payments on the loan were deferred and in exchange Martin agreed to release "all claims against Shellpoint through February 2, 2024."

On October 15, 2024, Martin filed a "Petition for Relief from Financial Obligation During Military Service" pursuant to Military and Veterans Code section 409.3. That statute provides in relevant part:

"(a) A service member may, at any time during their most current period of military service or within six months thereafter, petition a court for relief in respect of any obligation or liability incurred by the service member before the effective date of the orders for their most current period of military service….

"(b) The court shall set a hearing on the petition within 25 days from the date the petition is filed, unless the court shows good cause for extending the date of the hearing.

2

The petition shall be served at least 10 days before the hearing.  The respondent shall file and serve a response to the petition at least five days before the hearing.

[¶]

"(d) If, after notice and hearing, the court finds the ability of the service member to comply with the terms of any such obligation or liability … has been materially affected by reason of their most current period of military service …, the court may grant the following relief:  [¶] (1) … [A] deferment of the payments due on the obligation for a period of time equal to the period of military service…."  (Mil. & Vet. Code, § 409.3, subds. (a), (b) & (d).)

Martin's petition sought deferment of her monthly loan payments to Shellpoint based on the alleged financial hardship created by her active military service that began in June of 2022.  Her petition also requested that Shellpoint refund any payments she made during the period of proposed deferment (June 2022 through July 2025).

Martin served the petition by mailing a copy of it (with a civil case cover sheet and supporting documents) to Shellpoint's out-of-state agent for service of process via first-class mail, return receipt requested, on October 17, 2024.  (§ 415.40; Cal. Rules of Court, rule 3.1372.)  After initially setting the petition for a hearing on November 7, 2024, the trial court later dropped the matter from its calendar due to defects in the notice and supporting affidavit.

On November 15, 2024, Martin served (but did not file) an amended petition that cured the defects identified by the trial court.  The amended petition gave notice that a hearing on the petition would be held on December 10, 2024.

As with the original petition, Martin served the amended petition by mailing a copy of it (along with an amended declaration and affidavit, and the *original* civil case

cover sheet and Judicial Council MIL-100 form) to Shellpoint's out-of-state agent.[2] The documents were received by Shellpoint's agent on November 21, 2024.

That same day, November 21, 2024, Shellpoint retained counsel, who called Martin's counsel to discuss the *original* petition. He informed Martin's counsel of the prior litigation and the settlement and argued that the relief requested in Martin's petition conflicted with the terms of the settlement. He suggested the parties try to resolve the dispute by stipulation, and Martin's counsel seemed "amenable" to this proposal. On December 2, 2024, there was a follow-up exchange of emails in which the parties discussed a stipulation largely consistent with the terms of the settlement. Shellpoint's counsel ended by saying that he would need to discuss the matter with his client before finalizing any agreement.

In accordance with Military and Veterans Code section 409.3, subdivision (b), the response to Martin's amended petition had to be filed and served by December 5, 2024. On that date, Shellpoint's counsel checked the register of actions for the case and saw that nothing had been filed since the trial court's minute order vacating the hearing on the original petition. Unaware there was a deadline to respond even though the amended petition had been served on his client, Shellpoint's counsel did not file a response or opposition.

The following day, December 6, 2024, Martin filed the amended petition, amended declaration, amended affidavit, and proof of service for those documents.

Shellpoint did not appear for the December 10, 2024 hearing on the amended petition. On the day of the hearing, the trial court issued a minute order granting the unopposed petition. The trial court found that Shellpoint was properly served with the

---

[2] Service is effective on the date of mailing, even though service is not "deemed complete," and the period allowed for filing a response does not begin to run, until the tenth day after mailing. (§ 415.40; *Johnson & Johnson v. Superior Court* (1985) 38 Cal.3d 243, 248-250.)

4

amended petition; that Martin has a financial obligation for which relief can be granted under Military and Veterans Code section 409.3; and that Martin has submitted evidence showing that her ability to comply with the terms of such obligation has been "materially affected" by her military deployment. Thus, "[b]ased on the record," the court found it "appropriate" to defer the payments on Martin's mortgage loan during the period of her active service.

A final order granting the petition was filed on December 11, 2024 (the December 2024 order). The order defers Martin's obligation to make payments to Shellpoint from June 5, 2022, through August 1, 2025 (or the date of her release from active military service). The order also (1) extends the maturity date of the loan by a period equal to the period of deferment, and (2) requires Shellpoint to refund any payments (of principal and interest) made during the deferment period.

Notice of the order granting the petition was served on Shellpoint's agent for service of process by regular mail on December 11, 2024. (§ 1010.) The December 2024 order was not served on Shellpoint's counsel.

On February 24, 2025, Martin filed a new complaint alleging that Shellpoint had not complied with the December 2024 order on the amended petition. Shellpoint's counsel received the complaint from his client on February 26, 2025. He claims this is when he first learned of the December 2024 order on the amended petition.

Shellpoint contacted Martin and attempted to have the December 2024 order on the amended petition set aside, but Martin refused. Thus, on March 17, 2025, Shellpoint filed a motion for relief under section 473(b). The motion argued that the order was entered due to mistake, inadvertence, surprise, and/or excusable neglect. The motion explained that there was a "miscommunication" between counsel in that Martin's counsel claimed to have disclosed the December 10, 2024 hearing date, but Shellpoint's counsel did not recall that information being disclosed. To the extent the hearing date was disclosed, Shellpoint's counsel claimed that he must have failed to add it to his calendar.

5

Further, after checking the register of actions on December 5, 2024, and seeing no amended petition, Shellpoint's counsel mistakenly believed that nothing had been filed. He therefore did not file a response and made no arrangements to appear at the hearing. The motion argued that Martin would not be prejudiced if the motion was granted because Shellpoint acted diligently in seeking relief, and the December 2024 order on the amended petition was inconsistent with the terms of the parties' settlement.

After substituting counsel, Martin filed her opposition to the motion. Martin asserted that the amended petition was properly served on Shellpoint before any appearance of counsel, and that Martin's then-attorney had no duty to notify Shellpoint's counsel about the hearing. She also argued that Shellpoint failed to comply with the substantive or procedural requirements of section 473(b). She claimed that the mandatory relief provisions of the statute do not apply because there was no " 'entry of default' " or " 'default judgment.' " She claimed that discretionary relief was unavailable because the facts did not establish *excusable* neglect. In addition, Martin claimed she would suffer great prejudice if Shellpoint were granted relief because she would lose the benefits of the order.

In its reply, Shellpoint addressed the asserted procedural deficiencies in its motion. Shellpoint also responded to Martin's substantive arguments about whether relief was available under the mandatory and discretionary provisions of section 473(b); whether Martin would suffer prejudice; and whether Martin's then-counsel had a duty to warn opposing counsel of its intent to seek the order.

The trial court denied the motion. The trial court ruled that the mandatory relief provisions of section 473(b) did not apply because the order granting the unopposed petition was not a default, default judgment, or dismissal. The court denied discretionary relief because the facts did not establish excusable neglect.

A notice of ruling was served on May 29, 2025. A timely notice of appeal followed on July 2, 2025. (§ 904.1, subd. (a)(2).)

6

DISCUSSION

I

*Governing Law*

Section 473(b) provides in pertinent part: "The court *may*, upon any terms as may be just, relieve a party or the party's legal representative from a judgment, dismissal, order, or other proceeding taken against the party through the party's mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken…. Notwithstanding any other requirements of this section, the court *shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to the attorney's mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against the attorney's client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against the attorney's client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties…." (§ 473, subd. (b), italics added.)

By its terms, section 473(b) contains two distinct provisions for relief: One mandatory, the other discretionary. (*Rodriguez v. WNT, Inc.* (2025) 116 Cal.App.5th 791, 802.) The mandatory provision is available only for defaults, default judgments, and dismissals. (*Ibid*.) It mandates a trial court to set aside a default, default judgment, or dismissal if the motion for relief (1) is in proper form, (2) is filed within six months of the

7

entry of judgment, (3) is accompanied by an attorney affidavit of fault attesting to his or her "mistake, inadvertence, surprise, or neglect," and (4) demonstrates that the default or dismissal was "in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (*Ibid*.; *Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 443 (*Martin Potts*); § 473, subd. (b).)

" 'The purposes of the mandatory relief provision [are] to promote the determination of actions on their merits, to relieve innocent clients of the burden of the attorneys' fault, to impose the burden on the erring attorney, and to avoid the precipitation of additional litigation in the form of malpractice suits.' " (*Pagnini v. Union Bank, N.A.* (2018) 28 Cal.App.5th 298, 302.) As a result, relief under the mandatory provision is available whether or not the attorney's error is excusable, so long as the attorney's affidavit of fault shows the error was the fault of the attorney. (*Martin Potts, supra,* 244 Cal.App.4th at p. 439.) If the statutory prerequisites for the mandatory provision are satisfied, the court *must* grant relief. (*Talbott v. Ghadimi* (2025) 109 Cal.App.5th 967, 977.)

Unlike the mandatory provision, which only applies in the case of a default, default judgment, or dismissal caused by an attorney's mistake, inadvertence, surprise, or neglect, the discretionary provision gives courts power to grant relief from a broad category of adverse decisions (judgments, dismissals, orders, or other proceedings) caused by the mistake, inadvertence, surprise, or excusable neglect of the party or the party's attorney. (*Martin Potts, supra,* 244 Cal.App.4th at p. 438; *Esther B. v. City of Los Angeles* (2008) 158 Cal.App.4th 1093, 1099-1100; § 473, subd. (b).) And while the mandatory provision applies even if the attorney's error is inexcusable, discretionary relief may be granted only where the mistake or neglect is " 'excusable.' " (*Martin Potts,* at p. 438, italics omitted.)

Because state policy favors the determination of actions on their merits, any doubts in applying section 473 are resolved in favor of the party seeking relief from a

8

default or dismissal.  (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 255-256 (*Zamora*); see *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1778.)  Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980; but see *In-Home Supportive Services et al. v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 733 [rule of liberal construction cannot override clear statutory language].)

II

*Analysis*

Shellpoint contends that the trial court erred in refusing relief under both the mandatory and discretionary provisions of section 473.  As we explain, we find no error.

A.    *Mandatory Relief*

With respect to the mandatory provision, the parties dispute whether the phrase " 'default judgment' " is broad enough to encompass a judgment taken against a party who failed to appear at the hearing on the merits.  Shellpoint argues that a judgment entered against a party who fails to appear in the action is a "de facto default judgment," and therefore, mandatory relief should apply to alleviate the hardship on parties who lose their day in court due solely to the neglect of their counsel.  Shellpoint argues that the evidence here established that it failed to answer or otherwise appear in this action due (at least in part) to an error by its counsel, who mistakenly believed no amended petition had been filed.  Thus, Shellpoint contends the trial court erred in denying its request for relief under the mandatory relief provision of section 437(b).

Martin argues that a " 'default judgment' " for purposes of section 473(b) refers only to the resulting judgment issued after a defendant's default has been entered by a clerk.  Because the December 2024 order on the amended petition was a judgment

9

following an uncontested hearing, not a " 'default judgment,' " Martin contends the trial court correctly concluded that the mandatory relief provision of section 473(b) did not apply. Martin also contends that Shellpoint's motion was properly denied for other reasons, including that Shellpoint (1) failed to request mandatory relief in its motion, (2) failed to show it has a meritorious defense to the action, (3) failed to attach a proposed responsive pleading to its motion, (4) failed to act with diligence in bringing its motion, and (5) failed to support its motion with an adequate attorney affidavit of fault.

We begin with the question of whether the December 2024 order on the amended petition constituted a default judgment for purposes of the mandatory relief provisions of section 473(b). This is a matter of statutory construction, subject to de novo review. (*Las Vegas Land & Development Co., LLC v. Wilkie Way, LLC* (2013) 219 Cal.App.4th 1086, 1090.) We agree with the trial court that the order is not a default judgment within the meaning of section 473(b).

Historically, there were two lines of cases regarding the interpretation of the terms " 'default' " and " 'default judgment' " under section 473(b). (*The Urban Wildlands Group, Inc. v. City of Los Angeles* (2017) 10 Cal.App.5th 993, 998 (*Urban Wildlands*).) The first line of cases, representing the majority view, held that the terms "default" and "default judgment" should be construed narrowly to mean the entry of default by a clerk (or court) and resulting default judgment after a defendant fails to timely answer following proper service of process (§ 585). (*Ibid.*; *Las Vegas Land & Development Co., LLC v. Wilkie Way, LLC, supra*, 219 Cal.App.4th at p. 1092; *Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 226-228; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1417; *Hossain v. Hossain* (2007) 157 Cal.App.4th 454, 457-459; *Vandermoon v. Sanwong* (2006) 142 Cal.App.4th 315, 320-321; *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 143 (*English*); see *Rodriguez v. WNT, Inc., supra*, 116 Cal.App.5th at pp. 804-805 [describing this line of cases as the majority view].) The second line of cases, representing the minority view, defined "default" more broadly to

10

include circumstances deemed analogous to (or the procedural equivalent of) a default, even if there was no actual default or default judgment. (*In re Marriage of Hock & Gordon-Hock* (2000) 80 Cal.App.4th 1438, 1442-1447 [mandatory relief applied after attorney's failure to appear at time of trial]; *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 598-602 [mandatory relief applied to judgment entered after attorney failed to appear and litigate at arbitration hearing]; *Avila v. Chua* (1997) 57 Cal.App.4th 860, 865-869 [mandatory relief applied to summary judgment granted without consideration of opposition due to attorney error].)

The leading case for the first line of cases is this court's decision in *English, supra,* 94 Cal.App.4th 130. In *English*, the plaintiff sought relief under section 473(b)'s mandatory relief provision based on her attorney's failure to oppose a summary judgment motion. (*English,* at p. 133.) The trial court denied the motion. (*Ibid.*) On review, we affirmed the denial of the plaintiff's motion for relief from the summary judgment. (*Ibid*.) After examining the language of the mandatory relief provision, its legislative history, and the cases interpreting it, we construed the word " 'default' " to refer narrowly to a default entered by a clerk (or court) under the statutory procedures that apply when a defendant fails to answer a complaint (§ 585). (*English*, at p. 143.) We then concluded that it "follows inexorably" that a "default judgment" for purposes of section 473(b) refers to the resulting judgment after the defendant has failed to answer and the defendant's default is entered. (*English*, at p. 143.) We disagreed with other courts' "expansive" interpretations that extended the scope of the mandatory relief provision to encompass situations " 'analogous' " to a default judgment. (*Id*. at pp. 144-148.) Applying these definitions, we concluded that a summary judgment is neither a default nor a default judgment within the meaning of section 473(b) because it is not a judgment entered after the defendant has failed to answer and the defendant's default has been entered. (*English*, at pp. 144, 149.) It is instead an adjudication based on undisputed facts before the court. (*Ibid*.)

11

Since *English* was decided, numerous other courts have followed its reasoning. (See *Urban Wildlands, supra*, 10 Cal.App.5th at p. 999, and the cases cited therein.) In contrast, the lead cases for the minority view—applying section 473(b) more broadly— have been disapproved or repudiated. (*Rodriguez v. WNT, Inc., supra*, 116 Cal.App.5th at p. 804, citing *Urban Wildlands*, at p. 1000, and *Shayan v. Spine Care & Orthopedic Physicians* (2020) 44 Cal.App.5th 167, 170; see *Hossain v. Hossain, supra,* 157 Cal.App.4th at p. 458 [disagreeing with *Yeap*].) Accordingly, it appears there is no longer a split of authority on this issue: The mandatory relief provision does not apply absent an actual default, default judgment, or dismissal.

Moreover, if there were any lingering doubt, at least two decisions from this court have endorsed a narrow construction of the mandatory relief provision in the context of a judgment entered after a party's failure to appear at trial. In both cases, our court held the party who failed to appear was not entitled to mandatory relief because the resulting judgment was not a "default," "default judgment," or "dismissal," but rather a "judgment following an uncontested trial." (*Noceti v. Whorton* (2014) 224 Cal.App.4th 1062, 1064-1068; *Vandermoon v. Sanwong, supra,* 142 Cal.App.4th 315, 317, 319-321; see also *Merrifield v. Edmonds* (1983) 146 Cal.App.3d 336, 341.)

We reach the same conclusion here. (See Mil. & Vet. Code, § 409.3, subd. (d) [to grant the petition, the court must find, after notice and hearing, that the petitioner's ability to pay the financial obligation has been materially affected by his or her military service].) The December 2024 order on the amended petition was a judgment following an uncontested trial. It was *not* a default or default judgment.[3] Accordingly, we

---

[3] Indeed, it is not clear the ordinary default rules even apply to a proceeding under Military and Veterans Code section 409.3. (*In re Christopher A.* (1991) 226 Cal.App.3d 1154, 1162 [the default provisions of section 585 et seq. do not apply to special proceedings unless specifically made applicable]; *People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 723 [judicial remedies are divided into actions and special proceedings]; *California Employment Com. v. Sutton* (1945) 69 Cal.App.2d 181, 184 [proceedings in

12

conclude that the trial court properly denied Shellpoint's request for mandatory relief under section 473.

B.    *Discretionary Relief*

Shellpoint also contends that the trial court erred in refusing to grant discretionary relief under section 473(b).

A party that seeks relief under section 473 on the basis of mistake or neglect of counsel must demonstrate that such mistake or neglect was excusable. (*Zamora, supra*, 28 Cal.4th at p. 258.) In determining whether an attorney's mistake or neglect was excusable, the court inquires whether a reasonably prudent person under the same or similar circumstances might have made the same error. (*Ibid*.) Because attorneys are held to a standard of conduct befitting those with specialized training and skill, and because clients generally are bound by the decisions of their counsel, the discretionary relief provision of section 473(b) only permits relief from attorney error that is " 'fairly imputable to the client, i.e., mistakes anyone could have made.' " (*Zamora,* at p. 258.; *Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 26.) " 'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable.' " (*Zamora*, at p. 258.)

We review a trial court's decision to deny discretionary relief for an abuse of discretion. (*Zamora, supra*, 28 Cal.4th at p. 257.) We defer to the trial court's factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court's decision exceeds the bounds of reason. (*Minick v. City of Petaluma, supra*, 3 Cal.App.5th at p. 24; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) The trial court's ruling shall not be disturbed without a clear showing of abuse. (*Zamora*, at p. 257.) Further, under the rules of appellate review, we

---

mandamus, certiorari and the like are classified as special proceedings]; *Boggs v. North American Bond & Mortgage Co.* (1937) 20 Cal.App.2d 316, 318-319 [petition for relief under the Mortgage and Trust Deed Moratorium Act of 1935 is a special proceeding].)

13

review the trial court's decision, not its reasoning. (*Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1094.) " '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.' " (*Ibid.*)

Here, we conclude the trial court did not abuse its discretion in denying Shellpoint's request for discretionary relief. As the party moving for relief under section 473(b), Shellpoint had the burden of establishing entitlement to relief by a preponderance of the evidence. (*Huh v. Wang, supra*, 158 Cal.App.4th at p. 1423.) Shellpoint simply did not carry its burden. The only evidence offered by Shellpoint in support of its motion was the declaration of its attorney, who claimed that he was unaware of his duty to answer or appear, either (1) because opposing counsel failed to inform him that an amended petition had been filed or (2) because he was informed and failed to add it to his calendar. Shellpoint's counsel also blames opposing counsel for not filing the amended petition until December 6, 2024, after the deadline for Shellpoint to file a response, which ostensibly prevented him from discovering the petition when he searched the docket the previous day.

Conspicuously absent from the attorney's declaration, however, is any explanation as to why Shellpoint's counsel did not learn about the amended petition from his client. The record is clear that Shellpoint was properly served with the amended petition nearly a week before Shellpoint retained counsel. Despite this, there is no evidence (or even a claim) that the attorney's failure to appear was the result of any inadvertence, mistake, or negligence on the part of the client.[4] Instead, Shellpoint relies solely upon the alleged "mistake and … failure of communication between the parties' attorneys."

---

[4] An attorney's failure to appear may be excusable if it was due to the client's mistake in failing to communicate with the attorney. (See, e.g., *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 234, superseded by statute on other grounds as stated in *Tackett v. City of Huntington Beach* (1994) 22 Cal.App.4th 60, 64) [where an attorney was unaware of his duty to appear or answer because his employees misplaced papers or misinformed him as to the relevant date, relief is routinely granted].)

14

On this record, it was not an abuse of discretion to find that Shellpoint's evidence was insufficient to establish *excusable* neglect or mistake. The trial court had no basis to conclude that Shellpoint's attorney acted as a reasonably prudent person in the absence of a more robust explanation of how the alleged mistake or neglect actually occurred. Based on the limited evidence that was before the court, the trial court was well within its discretion in concluding that counsel's failure to answer and appear was inexcusable. (See *Huh v. Wang, supra*, 158 Cal.App.4th at pp. 1423-1424; *Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1146-1147; *Yarbrough v. Yarbrough* (1956) 144 Cal.App.2d 610, 615-616; see *Bellm v. Bellia* (1984) 150 Cal.App.3d 1036, 1038.)

Moreover, to qualify for discretionary relief, section 473(b) requires that the application be made "within a reasonable time … after the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b).) Unexplained delays of more than three months generally result in denial of relief. (See, e.g., *Minick v. City of Petaluma, supra*, 3 Cal.App.5th at p. 34; *Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1184; *Caldwell v. Methodist Hospital* (1994) 24 Cal.App.4th 1521, 1525; *Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625.)

Shellpoint's motion for relief was not brought until more than three months after its client was properly (§ 1010) served with a notice of entry for the December 2024 order on the amended petition. And Shellpoint never provided an adequate explanation for that delay. Accordingly, the motion may be denied on this basis as well. (*Younessi v. Woolf, supra*, 244 Cal.App.4th at pp. 1144-1145; *Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1416-1417; see *Huh v. Wang, supra*, 158 Cal.App.4th at p. 1422.)

DISPOSITION

The order denying the section 473(b) motion is affirmed. Martin shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


\s\
KRAUSE, J.


We concur:


\s\
EARL, P. J.


\s\
MAURO, J.

16